**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ESTATE OF JOSEPH H. DAHER, by its Personal Representative, Christina Ann Daher,<br><br>             Plaintiff,<br><br>   v.<br><br>LSH CO. and LSH II CO.,<br><br>             Defendants. | C.A. No. 20-360-LPS-JLH |

**REPORT AND RECOMMENDATION**

This dispute arises out of a $5 million insurance policy on the life of Joseph H. Daher. After its issuance in 2006, ownership of the policy changed hands several times. When Mr. Daher died in 2017, Defendants LSH CO. and LSH II CO. owned the right to the death benefit payment and were paid $5 million.

Mr. Daher's estate wants the $5 million. It filed this suit under a Delaware state statute that permits a decedent's personal representative to recover an insurance benefit payment from the recipient of that payment in situations where the insurance policy should have never been issued in the first place due to the lack of an insurable interest.

The sole issue before the Court is whether it has personal jurisdiction over LSH CO. Because I conclude that the Court lacks personal jurisdiction, I recommend that LSH CO.'s Motion to Dismiss (D.I. 26) be GRANTED.

**I.    BACKGROUND**

"Since the initial creation of life insurance during the sixteenth century, speculators have sought to use insurance to wager on the lives of strangers." *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr., ex rel. Christiana Bank & Tr. Co.*, 28 A.3d 1059, 1069 (Del. 2011) ("*Price Dawe*").

In response to the practice, the law developed a requirement that a person seeking to take out a life insurance policy on another have some reason to want the insured to remain alive. That concept is now known as the "insurable interest" requirement. The United States Supreme Court has articulated the public policy behind the requirement as follows:

> [T]here must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy.

*Warnock v. Davis*, 104 U.S. 775, 779 (1881); *see also Price Dawe*, 28 A.3d at 1069 (quoting *Warnock*); *Baltimore Life Ins. Co. v. Floyd*, 91 A. 653, 656 (Del. Super. Ct. 1914) ("To avoid [the situation] in which a beneficiary may become interested in the early death of the insured, it is held that the insurance upon a life shall be effected and resorted to only for some benefit incident to or contemplated by the insured, and that insurance procured upon a life by one or in favor of one under circumstances of speculation or hazard amounts to a wager contract and is therefore void, upon the theory that it contravenes public policy."), *aff'd,* 94 A. 515 (Del. 1915).

Like most states, Delaware has an insurable interest requirement. *Price Dawe*, 28 A.3d at 1069-70. Pursuant to 18 Del. C. § 2704(a), subject to certain exceptions, "[1] [a]ny individual of competent legal capacity may procure or effect an insurance contract upon his or her own life or body for the benefit of any person, [2] but no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable [i] to the individual insured or his or her personal representatives or [ii] to a person having, at the time when such contract was made, an insurable interest in the individual insured." 18 Del. C. § 2704(a); *Price Dawe*, 28 A.3d at 1073. The first clause says that a person

2

may take out an insurance policy on his own life and make it payable to anyone, even a stranger. *Price Dawe*, 28 A.3d at 1073. The second clause says that, if a policy is taken out on the life of another, the benefits must be payable to either (i) the person insured or his/her personal representative or (ii) someone who, at the time the insurance contract was made, had an "insurable interest" in the insured. *Id.* The statute defines those with an "insurable interest" to include, among others, "individuals related closely by blood or by law [who have a] substantial interest engendered by love and affection," the trustee of a trust created and funded by the insured, and individuals with "a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue." 18 Del. C. § 2704(c).

The Delaware insurable interest statute does not bar a person from taking out a policy on his own life in good faith and then transferring it to someone without an insurable interest. *Price Dawe*, 28 A.3d at 1068, 1074. Because life insurance policies have value, and it is legal to transfer them, a secondary market for them has emerged. Over time, however, increased market demand for high-dollar policies led to some undesirable effects, as the Delaware Supreme Court concisely explained in 2011:

> Over the last two decades [prior to 2011], . . . an active secondary market for life insurance, sometimes referred to as the life settlement industry, has emerged. This secondary market allows policy holders who no longer need life insurance to receive necessary cash during their lifetimes. The market provides a favorable alternative to allowing a policy to lapse, or receiving only the cash surrender value. The secondary market for life insurance is perfectly legal. Indeed, today it is highly regulated. In fact, most states have enacted statutes governing secondary market transactions, and all jurisdictions permit the transfer or sale of legitimately procured life insurance policies. Virtually all jurisdictions, nevertheless, still prohibit third parties from creating life insurance policies for the benefit of those who have no relationship to the insured. These policies, commonly known as "stranger originated life insurance," or STOLI, lack an insurable interest and are thus an illegal wager on human life.

3

> In approximately 2004, securitization emerged in the life settlement industry. Under this investment method, policies are pooled into an entity whose shares are then securitized and sold to investors. Securitization substantially increased the demand for life settlements, but did not affect the supply side, which remained constrained by a limited number of seniors who had unwanted policies of sufficiently high value. As a result, STOLI promoters sought to solve the supply problem by generating new, high value policies.

*Price Dawe*, 28 A.3d at 1069-70.  Since STOLI promotors could not legally take out life insurance policies for the benefit of investors who lacked an insurable interest, they concocted various schemes to conceal what they were up to.  The details of the schemes vary, but the basic idea is that a "stranger" persuades a senior citizen to obtain a life insurance policy on his own life so that the policy can subsequently be transferred and sold in the market.  To induce the senior to participate, the stranger may fund the policy premiums and may even pay compensation to the senior.  *Price Dawe*, 28 A.3d at 1076.

In its seminal decision in *Price Dawe* in 2011, the Delaware Supreme Court held that life insurance policies procured via STOLI schemes violate the Delaware insurable interest requirement.  According to the Court, "if [a] third party uses the insured as an instrumentality to procure [a life insurance] policy, then the third party is actually causing the policy to be procured, which the second clause of section 2704(a) proscribes."  *Id.* at 1074.  The Court further held that STOLI policies were void *ab initio*[1] because they violate Delaware's public policy against wagering.  *Id.* at 1067-68.

---

[1] "*Ab initio*" means "from the beginning."  Black's Law Dictionary (11th ed. 2019).

Section 2704(b) of the insurable statute provides a cause of action against a recipient of benefits paid under a policy that lacks an insurable interest. It states, in pertinent part: "If the beneficiary, assignee or other payee under any contract made in violation of [§ 2704(a)] receives from the insurer any benefits thereunder accruing upon the death . . . of the individual insured, . . . his or her executor or administrator . . . may maintain an action to recover such benefits from the person so receiving them." 18 Del. C. § 2704(b).

## II.     FACTS

Defendants LSH CO. and LSH II CO. (collectively, "LSH")[2] received a $5 million death benefit payment pursuant to an insurance policy (the "Policy") on the life of Joseph H. Daher. Plaintiff, the Estate of Joseph H. Daher ("Plaintiff"), contends that it is entitled to the $5 million under 18 Del. C. § 2704(b) because the Policy was an illegal STOLI policy that amounted to a wager on Mr. Daher's life.

At all times relevant, Mr. Daher was a resident of California.[3] The Policy was issued in 2006, when he was 80 years old. (D.I. 30, Ex. 2.) It was issued by American General Life Insurance Company ("American General").[4] (D.I. 23 ("FAC") ¶¶ 26, 55, Ex. 5.) The Policy states that it is subject to Delaware law. (*Id.*)

---

[2] LSH CO. submitted a declaration indicating that Defendant LSH II CO. "cease[s] to exist." (D.I. 20 ¶ 3.) Plaintiff acknowledges that the Court's resolution of the pending Motion to Dismiss in favor of LSH CO. would resolve the case. (Tr. 29:17-25.)
    Both sides refer to the named defendants, collectively, as "LSH," and I will do so here.

[3] The parties also do not dispute that Mr. Daher's Estate is deemed to be a California resident, and that its executor is also a California resident. (FAC ¶ 1.)

[4] The record before the Court does not indicate the corporate citizenship of American General. The Policy lists the "Home Office" of American General as Houston, Texas, and states that premiums may be paid to the Home Office. (FAC, Ex. 5 at 1-2, 4.)

5

According to the FAC, the Policy was "procured," not by Mr. Daher, but by "a family of interrelated Delaware Entities known generally as Coventry." (*Id.* ¶¶ 9, 10, 15.) The FAC alleges that Coventry was acting as a "STOLI promoter": Coventry did not have an insurable interest in Mr. Daher's life, and the Policy was not obtained for the benefit of Mr. Daher or his family "but rather for investors." (*Id.* ¶¶ 15, 16.)

In order to understand the current dispute, it is not necessary to have a complete understanding of all of the details of Coventry's alleged scheme to conceal the lack of an insurable interest in the Policy. But Plaintiff points to the following in support of its position that the Court has jurisdiction. As part of the alleged scheme, a Delaware statutory trust (the "Joseph Daher Insurance Trust") was created (pursuant to 12 Del. C. § 3801, *et seq.*) to hold legal title to the Policy. (FAC ¶¶ 17-21, 24-25, 27-28, Ex. 5.) Wilmington Trust Company, a Delaware entity located in Wilmington, Delaware, was named as the trustee. (*Id.* ¶¶ 17-19, 24.) In its capacity as trustee, Wilmington Trust created a sub-trust that took out a loan to finance the cost of the Policy. (*Id.* ¶ 21.) According to Plaintiff, the paperwork for that loan was on Coventry's "boilerplate form (the same form used in hundreds—if not thousands—of [STOLI] cases)." (*Id.* ¶¶ 22-23, 30-31.)

Starting in 2008, ownership of the Policy changed multiple times. Wilmington Trust, as trustee, transferred ownership to another Delaware entity who, in turn, transferred nominal title to Wells Fargo Bank, N.A., as securities intermediary. (*Id.* ¶¶ 33-39.) Wells Fargo then remained the "record owner" of the Policy as it changed hands several more times, including through at least one Delaware entity. (*Id.* ¶¶ 38-41.)

Wells Fargo was still securities intermediary when LSH purchased the Policy from CMG Life Services, Inc., a Tennessee Corporation, in 2012. (*Id.* ¶ 41; D.I. 30, Ex. 1 at 3.) LSH CO. and LSH II CO. are foreign limited liability companies incorporated under the laws of the Grand

6

Duchy of Luxembourg, and their principal places of business are in Luxembourg. (FAC ¶¶ 2, 3; D.I. 20 ¶ 2.) LSH is alleged to be the downstream owner of hundreds of life insurance policies, some of which are subject to Delaware law. (FAC ¶¶ 48-50.) But there are no factual allegations suggesting that LSH was involved in Coventry's alleged scheme to procure the Policy or that LSH had any involvement with the Policy prior to 2012. Nor does Plaintiff allege that LSH has ever been involved in any scheme to generate STOLI policies.

Mr. Daher passed away on December 8, 2017. (*Id.* ¶ 51.) After his death, LSH received the $5 million death benefit. (*Id.* ¶¶ 52-53; Tr. 13:6-18.)

Plaintiff originally filed this action on March 13, 2020, naming LSH II CO., LSH CO., and Wells Fargo Bank, N.A. as defendants. (D.I. 1.) Plaintiff subsequently dismissed its claims against Wells Fargo. (D.I. 14.) LSH CO. filed a motion to dismiss for lack of personal jurisdiction (D.I. 18), and Plaintiff responded by amending its complaint (D.I. 23).

On May 19, 2020, LSH CO. filed another motion to dismiss for lack of personal jurisdiction. (D.I. 26.) Briefing was complete on July 31, 2020. (D.I. 31.) LSH CO. requested oral argument (D.I. 32), and I heard oral argument on October 8, 2020. ("Tr. _".)

## II.   LEGAL STANDARDS

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Although Rule 8 does not require a plaintiff to set forth in the complaint "the grounds upon which the court has personal jurisdiction over the defendant," *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995), "once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). But if the district court does not hold an evidentiary hearing, the court should resolve any

7

factual disputes in the plaintiff's favor and should deny the motion if the plaintiff's evidence establishes "a prima facie case of personal jurisdiction." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (holding that a plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state").

## III. DISCUSSION

Defendant LSH CO. argues that the Court lacks personal jurisdiction over it. I agree.

To exercise personal jurisdiction over a defendant, a court generally must answer two questions: one statutory and one constitutional. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). The statutory inquiry requires the court to determine whether jurisdiction over the defendant is appropriate under the long-arm statute of the state in which the court is located. *IMO Indus.*, 155 F.3d at 259.

The constitutional inquiry asks whether exercising jurisdiction over the defendant comports with the Due Process Clause of the U.S. Constitution. *Id.* Due Process is satisfied where the court finds the existence of "certain minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's "contacts" with the forum state can give rise to "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). A court has general jurisdiction over a corporate defendant when its

"affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  If the court has general jurisdiction over a corporate defendant, it may hear any claim against it, even if the claim arose outside the state.  *Goodyear*, 564 U.S. at 919; *Provident Nat. Bank*, 819 F.2d at 437.  A court has specific jurisdiction over a defendant in a particular suit "when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"  *Goodyear*, 564 U.S. at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984)); *see also Remick*, 238 F.3d at 255.

I will start with the statutory inquiry.

### A.    Delaware Long-Arm Statute

Plaintiff asserts that jurisdiction is appropriate under subsections (c)(1) and (c)(4) of the Delaware long-arm statute, 10 Del. C. § 3104.  (Tr. 27:24-28:2.)  That statute provides, in pertinent part, that

> a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State; . . . [or]
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

10 Del. C. § 3104(c).  Neither subsection supports jurisdiction over LSH.

### 1.     10 Del. C. § 3104(c)(1)

As to subsection (c)(1), there are no facts alleged, much less evidence, to support a finding that LSH "[t]ransacts any business or performs any character of work or service" in Delaware. 10 Del. C. § 3104(c)(1). Indeed, the uncontroverted evidence of record demonstrates that LSH does not and has never conducted business in Delaware (D.I. 20 ¶ 5), derived substantial revenue from business activities in Delaware (*id.*), maintained offices or property in Delaware (*id.* ¶ 6), retained employees or agents in Delaware (*id.* ¶ 7), registered to do business in Delaware with the Delaware Secretary of State (*id.* ¶ 4), or commenced or defended litigation in Delaware (other than this suit) (*id.* ¶ 8).

LSH is alleged to be the downstream purchaser of certain insurance policies governed by Delaware law, including the Policy at issue in this case. LSH later received a $5 million death benefit payment on the Policy. But none of LSH's activities with respect to the Policy are alleged to have occurred in Delaware, and LSH has submitted uncontroverted evidence that they did not. (*Id.* ¶ 9; *see also* D.I. 27 at 11; Tr. 12:8-13:18, 18:21-25.) And none of LSH's non-Delaware activities with respect to the Policy amount to "transacting business" in Delaware under any reasonable interpretation of the phrase.

Plaintiff argues that LSH "transacts . . . business" in Delaware because it "purposely availed itself of the privileges and protections . . . [that] Delaware's highly-regulated insurance industry confers upon holders of Delaware policies." (D.I. 30 at 18.) But the cases Plaintiff cites as support are way off the mark. In *Macklowe v. Planet Hollywood, Inc.*, the Delaware Chancery Court held that a foreign limited partnership that selected as a general partner a Delaware corporation "doing business" in Delaware was subject to jurisdiction through service on the general partner, pursuant to 6 Del. C. § 17-911 (which governs the service of process on

unregistered foreign limited partnerships). No. 13-689, 1994 WL 586838, at *6-7 (Del. Ch. Oct. 13, 1994) (holding that 10 Del. C. § 3104 did not apply). In *Sternberg v. O'Neil*, the Delaware Supreme Court held that a foreign corporation's management of its Delaware corporate subsidiary for thirty years "constitute[d] a due process minimum contact which permits Delaware courts to assert specific jurisdiction over the foreign parent corporation in a double derivative action" in which the parent's management was the central issue in dispute. 550 A.2d 1105, 1117-18 (Del. 1988) (holding that a foreign corporation registered to do business in Delaware consented to general jurisdiction pursuant to 8 Del. C. § 376), *abrogated by Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016). Importantly, neither case assessed jurisdiction under 10 Del. C. § 3104. And neither stands for the proposition that the mere ownership of an insurance policy governed by Delaware law amounts to "transact[ing] business" in Delaware within the meaning of § 3104(c)(1).

To the extent Plaintiff contends that the mere ownership of something that is "heavily regulated" under Delaware law amounts to transacting business within the State within the meaning of § 3104(c)(1), I disagree. Delaware courts have rejected the assertion of jurisdiction in all roughly comparable situations. Ownership of a corporation that is incorporated in Delaware—and thus subject to Delaware's extensive corporate laws—"does not, without more, amount to the transaction of business under [subsection (c)(1) of] Delaware's Long Arm Statute." *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 439 (Del. 2005); *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, No. 2018-0783-PRW, 2020 WL 3564622, at *14 (Del. Super. Ct. June 29, 2020). Being a party to a contract with a Delaware choice of law provision is not "a sufficient transaction of business in the State to confer jurisdiction under (c)(1)." *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 805 (Del. Ch. 2009); *see also Mobilificio San Giacomo S.P.A. v. Stoffi*, No. 96-415-LON, 1996 WL 924508, at *9 n.4 (D. Del. Oct. 29, 1996). And

entering into a contract with a Delaware entity does not amount to transacting business under subsection (c)(1). *Abajian v. Kennedy*, No. 11-425, 1992 WL 8794, at *9-10 (Del. Ch. Jan. 17, 1992); *CLP Toxicology*, 2020 WL 3564622, at *14.[5]

Plaintiff stresses that (1) LSH knew or should have known that the Policy was subject to Delaware law (FAC ¶ 44); and (2) LSH should have known that the Policy (and others) lacked an

---

[5] It is not clear from Plaintiff's brief if it contends that acts taken by Coventry, Wilmington Trust (as trustee of the trust that previously owned the Policy), the Joseph Daher Insurance Trust itself, or any of the other previous owners of the Policy should be "imputed" to LSH for the purpose of assessing whether it transacts business in Delaware within the meaning of § 3104(c)(1). (*Compare* D.I. 30 at 13-15 *with id.* at 18-19.) Plaintiff points to cases involving corporate successors, but it cites no Delaware case supporting the proposition that the assignee of a contract automatically inherits all of the jurisdictional contacts of the assignor. Since contracting with a Delaware entity does not qualify as transacting business in Delaware for purposes of (c)(1), *Abajian*, 1992 WL 8794, at *9-10, I doubt that the Delaware Supreme Court would hold that the downstream assignee of a contract that was once assigned to an entity that transacted business in Delaware does qualify. *Cf. Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) ("[T]he courts that have [confronted the issue] have determined that an assignee does not step automatically into the shoes of the assignor for purposes of personal jurisdiction.").

Plaintiff also cites cases discussing the "conspiracy theory" of jurisdiction, but the facts don't support its application here. That theory "is based on the legal principle that one conspirator's acts are attributable to the other conspirators." *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (holding that the defendant was subject to personal jurisdiction under § 3104(c)(1) because its alleged co-conspirators transacted business in Delaware). Its application requires, among other things, facts demonstrating that there was a conspiracy—including a "meeting of the minds" about an unlawful object to be accomplished—of which the defendant was a member. *Id.* at 1027; *Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*, 589 F. Supp. 2d 490, 499 (D. Del. 2008) (holding that the plaintiff must assert specific factual evidence to show that the nonresident defendant was a conspirator); *see also MIG Investments LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 506 (D. Del. 2012) ("Delaware courts construe this test narrowly and require a plaintiff to assert specific facts, not conclusory allegations, as to each element."). Among other problems with Plaintiff's conspiracy argument, there are no non-conclusory allegations, much less evidence, that LSH had a "meeting of the minds" regarding an unlawful objective with any entity that transacted business in Delaware. (Tr. 23:6-14.) Again, there are no allegations that LSH was involved in the procurement of the allegedly illegal Policy or that it had an agreement with anyone who did.

12

insurable interest and was thus unenforceable under Delaware law (*id.* ¶¶ 22-23, 45-47, 49).[6] For purposes of the argument, I will accept both as true. But so what? What LSH knew or should have known is not the same thing as what it did or should have done, and what LSH did *not* do was transact any business in Delaware.

Plaintiff has failed to demonstrate jurisdiction under § 3104(c)(1).

### 2. 10 Del. C. § 3104(c)(4)

There are likewise no allegations or evidence supporting the assertion of jurisdiction under § 3104(c)(4). "To meet the requirements of subsection (c)(4), Plaintiff must show Defendant (a) regularly does or solicits business in Delaware, (b) engages in any other persistent course of conduct in Delaware, or (c) derives substantial revenue from services in Delaware." *Seiden for S. China Livestock, Inc. v. Schwartz, Levitsky, & Feldman LLP*, No. 17-1869-MN, 2018 WL 5818540, at *4 (D. Del. Nov. 7, 2018).[7] Plaintiff has not demonstrated that any of those requirements are met.

Indeed, Plaintiff does not argue that LSH has any of the regular, persistent, and substantial contacts with Delaware required by subsection (c)(4). Rather, Plaintiff cites the district court's opinion in *Robert Bosch LLC v. Alberee Products, Inc.* for the proposition that subsection (c)(4) "can have specific jurisdiction applications." (D.I. 30 at 19 (citing 70 F. Supp. 3d 665 (D. Del. 2014).) The *Robert Bosch* case is inapposite. There, the court assessed a line of Delaware cases

---

[6] *See* 18 Del. C. § 2704(g) (providing that "[t]he existence of an insurable interest with respect to . . . [a] trust-owned life insurance policy shall be governed by this section without regard to an insured's state of residency or location").

[7] Courts frequently refer to § 3104(c)(4) as embracing the concept of "general jurisdiction." *See, e.g., Thompson v. Roman Catholic Archbishop of Wash.*, 735 F. Supp. 2d 121, 127 (D. Del. 2010).

adopting the so-called "dual jurisdiction" theory, which permits the exercise of jurisdiction over a defendant whose products enter Delaware through the "stream of commerce." *Robert Bosch*, 70 F. Supp. 3d at 675 (explaining that the dual jurisdiction theory involves a combination of (c)(1) and (c)(4) and "requires a showing of both: (1) an intent to serve the Delaware market; and (2) that this intent results in the introduction of the product into the market and that plaintiff's cause of action arises from injuries caused by that product" (quoting *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267-68 (D. Del. 2010) (internal marks omitted))). The Delaware Supreme Court has never squarely addressed the viability of the dual jurisdiction theory, and judges in this district have split views. But the Court does not need to take a position on that here because the theory clearly is not applicable to the facts of this case. LSH is the downstream purchaser of certain life insurance policies, some of which are subject to Delaware law. It did not introduce any products into the stream of commerce that caused injury in Delaware.[8]

Section 3104(c)(4) does not apply.

### B.    Due Process

Having rejected Plaintiff's argument that jurisdiction is appropriate under 10 Del. C. § 3104(c)(1) and (c)(4), it is not necessary for the Court to consider whether LSH has minimum contacts with Delaware such that due process is satisfied. I nevertheless conclude that LSH lacks minimum contacts.

Plaintiff does not contend that the Court has general jurisdiction over LSH (Tr. 27:20-23), and it clearly does not. To assess specific jurisdiction, courts must consider (1) whether the defendant purposefully directed its activities at the forum, (2) whether the litigation arises out of

---

[8] If what Plaintiff really wants is for this Court to invent a new "hybrid" theory of personal jurisdiction (a request that Plaintiff has not explicitly made), I decline to do so.

14

the defendant's activities in the forum, and (3) "whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations and quotations omitted).

Plaintiff fails at step (1) of the analysis. As explained above, there are no allegations or evidence that LSH undertook any activities in, or directed at, Delaware.

Plaintiff emphasizes that the Policy is subject to Delaware law and was originally procured pursuant to a STOLI scheme involving a Delaware trustee. Plaintiff also points out that the Delaware insurable interest statute provides a cause of action against the recipient of a STOLI death benefit payment. In other words, Plaintiff contends that Delaware has a strong interest in hearing this dispute.

That is not enough. The Supreme Court long ago "rejected the argument that if a State's law can properly be applied to a dispute, its courts necessarily have jurisdiction over the parties to that dispute." *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977); *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984) (explaining that a choice of law provision "would not itself be enough to vest jurisdiction"). The Supreme Court has also made clear that

> [w]hile the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiffs forum of choice are, of course, to be considered, *see McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957), an essential criterion in all cases is whether the 'quality and nature' of the defendant's *activity* is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State.

*Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92 (1978) (emphasis added) (quoting *Int'l Shoe*, 326 U.S. at 316-17). In short, the question is not whether the public policies at issue in this case are

15

important to Delaware, but rather whether LSH's own activities in Delaware make it reasonable and fair to require it to defend itself here. They do not.[9]

I conclude that LSH lacks minimum contacts.

### III. CONCLUSION

For the foregoing reasons, I recommend that LSH CO.'s motion to dismiss (D.I. 26) be GRANTED and that the action be DISMISSED.[10]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: January 19, 2021

                                                                    Jennifer L. Hall
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[9] The *Klugman* case cited by Plaintiff is not binding on this Court, and it is nevertheless distinguishable, including because the insured in that case resided in the forum state. *Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A.*, No. 17-2905, 2017 WL 4953904, at *4 (D.N.J. Nov 1, 2017), *recon. denied by* 2017 WL 6539244, at *3 (D.N.J. Dec. 20, 2017).

[10] *See* n.2, *supra*. Plaintiff did not request the opportunity to conduct jurisdictional discovery.